**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TERRANCE T. NORMAN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 4:19-CV-02299-JAR |
| | ) | |
| SHERIE L. KORNEMAN, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Petitioner Terrance T. Norman's Amended Petition to Vacate, Set Aide, or Correct Sentence Pursuant to 28 U.S.C. § 2254. (Doc. 11). Respondent has responded (Doc. 12), and the time for Petitioner to reply has expired. For the reasons discussed below, the Amended Petition will be denied.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

On January 25, 2012, Petitioner entered the backseat of Detective Juan Wilson's vehicle. Detective Wilson was an undercover police officer, and an informant had brokered a transaction where Petitioner would sell Detective Wilson a .40 caliber Smith and Wesson handgun for $450. After receiving the $450, Petitioner allegedly pointed a loaded gun at Detective Wilson, instructed him not to move, exited the vehicle, and sped away in his own car. (Doc. 12-5 at 2).

In December 2013, a jury in Missouri state court convicted Petitioner of first degree robbery while acquitting him of armed criminal action. (Doc. 12 at 1; Doc. 12-5 at 5). Petitioner was subsequently sentenced to 25 years in prison. (*Id.*). Petitioner filed a direct appeal which was denied by the Missouri Court of Appeals on May 20, 2014. (Doc. 12-5). Petitioner proceeded to file a motion for post-conviction relief under Missouri Supreme Court Rule 29.15, which was

1

initially remanded by the Missouri Court of Appeals so that the lower court could conduct an abandonment inquiry regarding the motion's timeliness. (Doc. 12-10). On May 1, 2018, the Missouri Court of Appeals affirmed the denial of post-conviction relief. (Doc. 12-13). The Missouri Court of Appeals issued its mandate on May 25, 2018, completing the post-conviction relief appeal process. (Doc. 11 at 6; Doc. 12 at 9).

Petitioner filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 on August 5, 2019. (Doc. 1). On May 27, 2020, this Court granted Petitioner leave to file an Amended Petition. (Docs. 10, 11). This Court has liberally construed Petitioner's pro se Amended Petition. (Doc. 12). *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The Amended Petition states three grounds for relief:

> Ground One: Ineffective Assistance – Failure to Challenge Sufficiency of Evidence
>
> Ground Two: Ineffective Assistance – Converse Jury Instruction
>
> Ground Three: Due Process – Motion to Suppress

## II.   LEGAL STANDARD

A district court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The court may not grant a writ of habeas corpus as to any claim that was adjudicated on the merits in state court proceedings unless such adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"A state court's decision is contrary to . . . clearly established law if it applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if it confronts a set of facts that are materially indistinguishable from a [Supreme Court] decision . . . and nevertheless arrives at a [different] result." *Cagle v. Norris*, 474 F.3d 1090, 1095 (8th Cir. 2007) (alteration in original) (quoting *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003)). A state court "unreasonably applies" federal law when it "identifies the correct governing rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or "unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams v. Taylor*, 529 U.S. 362, 407 (2000). Finally, a state court decision is based on an unreasonable determination of the facts "only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Jones v. Luebbers*, 359 F.3d 1005, 1111 (8th Cir. 2004) (citations omitted). The petitioner must rebut this presumption by clear and convincing evidence. *Rice v. Collins*, 546 U.S. 333, 338-39 (2006).

## III.    DISCUSSION

### A.    Timeliness

Petitions under § 2254 are subject to a one-year statute of limitations pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). 28 U.S.C. § 2244(d). The statute provides, as it relates to this case, that the one-year period begins to run "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). The statute of limitations accordingly does not run until the mandate has issued and the time for seeking further review has expired. *Gonzales v. Thaler*, 565 U.S. 134, 150 (2012). This time period is tolled, moreover, during the

pendency of any state post-conviction application or other collateral review. 28 U.S.C. § 2244(d)(2).

Petitioner was sentenced on February 11, 2013 and timely appealed. (Doc. 1 at 1; Doc. 12 at 8). The Missouri Court of Appeals affirmed the conviction, with slight modification, on May 20, 2014, with the mandate issuing on June 13, 2014. (Doc. 12-8 at 5). Because Petitioner did not appeal to the Missouri Supreme Court, his one-year time period began running on approximately June 29, 2014. *See* Mo. Sup. Ct. R. 83.02 (requiring that application for transfer to Missouri Supreme Court be filed within 15 days of order). Petitioner filed his post-conviction motion pursuant to Mo. Sup. Ct. R. 29.15 on September 8, 2014, 72 days later, tolling AEDPA's one-year limit. (Doc. 11 at 6; Doc. 12 at 9).

The Missouri Court of Appeals affirmed the motion court's denial on May 1, 2018, and the mandate issued on May 25, 2018. (Doc. 11 at 6; Doc. 12 at 9; Doc. 12-13). Petitioner did not file his habeas petition in this Court until August 5, 2019. (Doc. 1). Adding the 72 days identified above, Petitioner sought review in this Court approximately 509 days after his review in state court was complete. Petitioner "acknowledges that his petition is untimely" but contends he is entitled to equitable tolling for two reasons. (Doc. 11 at 6).[1] The Eighth Circuit has clearly held that the one-year statute of limitations under the AEDPA "is a true statute of limitations rather than a jurisdictional bar." *Earl v. Fabian*, 556 F.3d 717, 722 (8th Cir. 2009) (citation omitted); *see also Day v. McDonough*, 547 U.S. 198, 208 (2006). This means that equitable tolling is permissible, but should only occur "when there exist extraordinary circumstances beyond a prisoner's control that made filing a timely petition impossible." *Mendoza v. Minnesota*, 100 Fed. App'x 587, 588 (8th Cir. 2004) (per curiam) (citation omitted).

---

[1] There are some inconsistencies in the parties' briefing as to when exactly certain mandates issued and appeal periods expired under Missouri law. These slight differences are immaterial, however, as it is readily apparent that Petitioner's claims are untimely unless equitable tolling is available.

*Actual Innocence*

Petitioner argues that this Court should overlook the untimeliness of his petition because he is actually innocent. The Supreme Court has held that the miscarriage of justice exception for procedural defaults survived passage of the AEDPA. *McQuiggin v. Perkins*, 569 U.S. 383, 397 (2013). The Eighth Circuit, citing *McQuiggin*, has repeatedly described the actual innocence standard as "demanding." *See, e.g.*, *Williams v. Hobbs*, 509 Fed. App'x 558 (8th Cir. 2013) (per curiam). In *McQuiggin*, the Supreme Court cautioned that "tenable actual-innocence gateway pleas are rare" and a petitioner does not meet this burden "unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *McQuiggin*, 569 U.S. at 386 (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)).

Petitioner has not presented any new evidence demonstrating his innocence. Instead he claims that the jury rendered an inconsistent verdict by convicting him of first degree burglary while acquitting him of armed criminal action. (Doc. 11 at 8). First, as discussed further below, this Court disagrees with Petitioner's assertion that the jury's verdict is inconsistent. Second, Petitioner's claim is more akin to one of legal innocence than actual innocence, which is not sufficient to satisfy the demanding standard for equitable tolling. *See Sawyer v. Whitley*, 505 U.S. 333, 339 (1992) ("We emphasized that the miscarriage of justice exception is concerned with actual as compared to legal innocence."); *Narcisse v. Dahm*, 9 F.3d 38, 40 (8th Cir. 1993) (reversing district court's granting of habeas relief where claim was one of legal innocence). Because Petitioner has not presented an actual innocence argument based on new evidence, no equitable tolling of the AEDPA statute of limitations is warranted. *See Moore v. Sachse*, 421 F. Supp. 2d 1209, 1214 (E.D. Mo. 2006) (citing *Pitts v. Norris*, 85 F.3d 348, 350-51 (8th Cir. 1996)) ("Pursuing an argument of legal innocence with no new evidence establish *factual*

5

innocence is insufficient to invoke the actual innocence exception.").

*Delayed Notice*

Petitioner claims that equitable tolling is merited because he received delayed notice of the Missouri Court of Appeals' decision and lacked access to the law library due to a riot at his prison. The Missouri Court of Appeals issued its mandate on May 25, 2018, but Petitioner alleges that he did not receive a letter from his attorney notifying him of the decision until November 6, 2018. Petitioner further claims that he did not receive the proper forms to file a § 2254 petition until June 11, 2019. (Doc. 11 at 8-9). Under AEDPA, Petitioner had until March 2019 to file a timely petition for habeas relief. No such petition was filed until August 5, 2019.

A litigant seeking equitable tolling must prove two elements: (1) that he has been pursuing his rights diligently; and (2) that some extraordinary circumstances stood in his way. *Burns v. Prudden*, 588 F.3d 1148, 1150 (8th Cir. 2009). Petitioner has the burden to demonstrate grounds warranting equitable tolling. *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). This Court finds that Petitioner did not pursue his rights diligently, nor did extraordinary circumstances prevent him from filing timely. Petitioner claims he received notice of the mandate on November 6, 2018, meaning by his own account he had approximately four months to file a timely petition. *See id.* at 419 (petitioner who waited five months after judgment to file habeas petition did not establish requisite diligence); *Earl v. Fabian*, 556 F.3d 717, 724 (8th Cir. 2009). As to Petitioner's lack of law library access or § 2254 forms, the Eighth Circuit has held that "lack of access to legal resources does not typically merit equitable tolling." *Earl*, 556 F.3d at 724; *see also Kreutzer v. Bowersox*, 231 F.3d 460, 463 (8th Cir. 2000) ("Even in the case of an unrepresented prisoner alleging a lack of legal knowledge or legal resources, equitable tolling has not been warranted.").

Because Petitioner has not demonstrated that he pursued his rights diligently or extraordinary circumstances stood in the way of his filing a timely petition, equitable tolling is not warranted. Despite Petitioner's claims being untimely and therefore deserving of dismissal under AEDPA, this Court will proceed in the alternative and address the other arguments presented by the parties.

B.   Procedural Default

Respondent contends that Petitioner has procedurally defaulted his first two grounds for relief because the claims were not presented at each step of the post-conviction proceedings. (Doc. 12 at 12-13). At least as to Ground One, Petitioner "acknowledges that this claim is procedurally defaulted because none of his previous attorneys presented the claim to the state courts." (Doc. 11 at 20).[2] Petitioner claims, however, that his default should be excused under the exception established by the Supreme Court in *Martinez v. Ryan*, 566 U.S. 1 (2012).

A habeas petitioner under § 2254 may avoid procedural default only by showing that there was cause for the default and resulting prejudice, or that a miscarriage of justice will result from enforcing the procedural default. *Wainwright v. Sykes*, 433 U.S. 72, 87, 90-91 (1977). To establish cause, the petitioner must show that "some objective factor external to the defense" prevented his compliance with a state procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). In *Coleman v. Thompson*, 501 U.S. 722 (1991), the Supreme Court established the general rule that counsel's errors in post-conviction proceedings do not qualify as cause for default. The Supreme Court recognized a narrow exception to this rule in *Martinez*, holding: "Where, under state law, a claim of ineffective assistance of trial counsel must be raised in an

---

[2] Petitioner raised Ground Two in his post-conviction motion. (Doc. 12-7 at 56). Petitioner did not, however, raise this claim on the appeal of the denial of his post-conviction motion. (Doc. 12-11). Therefore, the argument has been procedurally defaulted unless the *Martinez* exception applies. *See Arnold v. Dormire*, 675 F.3d 1082, 1087 (8th Cir. 2012) (internal quotation omitted) ("In Missouri, a claim must be presented at each step of the judicial process in

initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review proceeding, there was no counsel or that counsel was ineffective." *Martinez*, 566 U.S. at 17. The Supreme Court noted that the underlying ineffective assistance of trial counsel claim must be "a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Id.* at 14. Finally, the Supreme Court has clarified that this exception does not apply to claims of ineffective assistance of appellate counsel. *Davila v. Davis*, 137 S. Ct. 2058 (2017); *see also* 28 U.S.C. § 2254(i).

In Ground One, Petitioner alleges ineffective assistance of trial, appellate, and post-conviction counsel for failing to argue that the evidence was insufficient to support a conviction for first degree robbery. In Ground Two, Petitioner argues that trial counsel was ineffective for failing to request a converse jury instruction. As discussed above, the *Martinez* exception only applies to trial counsel, rendering Petitioner's claims in Ground One as to appellate and post-conviction counsel procedurally defaulted. Because Petitioner had access to appellate and post-conviction counsel, moreover, he must demonstrate ineffective assistance by such counsel to excuse his procedural default.

Petitioner has not demonstrated that his appellate or post-conviction counsel provided ineffective assistance by failing to pursue Grounds One and Two to completion. Under *Strickland v. Washington*, Petitioner must show that (1) appellate counsel's performance was objectively unreasonable and (2) Petitioner was prejudiced such that the result of the proceedings would have been different. 466 U.S. 668, 694 (1984). Judicial scrutiny of counsel's performance is "highly deferential," and this Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. On appeal,

---

order to avoid default.").

moreover, counsel "should not raise every nonfrivolous argument" but instead should include "only those arguments most likely to succeed." *Davila*, 137 S. Ct. at 2067 (citation omitted); *see also Oxford v. Delo*, 59 F.3d 741, 746 (8th Cir. 1995). As discussed below, this Court finds that Grounds One and Two of the Amended Petition are substantively meritless. Accordingly, it was not unreasonable for appellate and post-conviction counsel to decline to fully pursue those arguments, nor was Petitioner prejudiced. Because Petitioner's appellate and post-conviction counsel were not ineffective, his procedural default cannot be excused under the *Martinez* exception.

C.   <u>Substantive Analysis</u>

**Ground One: Ineffective Assistance – Failure to Challenge Sufficiency of Evidence**

In his first ground for relief, Petitioner argues that trial, appellate, and post-conviction counsel all rendered ineffective assistance by failing to argue that the evidence was insufficient to support a first degree robbery conviction. Petitioner claims that the acquittal for armed criminal action necessarily precludes conviction for first degree robbery based on the elements of each crime. At the outset, the Court notes that Petitioner's claim of ineffective assistance of post-conviction counsel is not cognizable on habeas review. *See* 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."); *Coleman*, 501 U.S. at 572 (citations omitted) ("There is no constitutional right to an attorney in state post-conviction proceedings. Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings.").

On January 25, 2012, Petitioner got into the backseat of a car with the undercover detective for a purported gun sale but instead stole $450 and fled. (Doc. 12-5 at 2). A critical

issue at Petitioner's trial was whether he threatened the victim with a gun or merely snatched the money and ran. A jury convicted Petitioner of first degree robbery pursuant to instructions which stated that Petitioner must have "displayed or threatened the use of what appeared to be a deadly weapon or dangerous instrument." (Doc. 12-1 at 412). The jury acquitted Petitioner of armed criminal action, however, which only included the elements that he (1) committed first degree robbery and (2) committed such offense "by or with or through the knowing use or assistance or aid of a deadly weapon." (*Id.* at 414). Petitioner argues that "[w]ithout the deadly weapon element, the State's evidence was insufficient to sustain a conviction for first degree robbery." (*Id.*). Petitioner's first ground for relief fails for three reasons.

First, there was sufficient evidence to support a conviction for first degree robbery. The applicable standard for determining whether a state court conviction is sufficiently supported is whether any "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Substantial evidence was presented at trial to support a finding that Petitioner committed first degree robbery. (*See generally* Doc. 12 at 16). There is clear Eighth Circuit precedent in nearly identical circumstances contradicting Petitioner's claim. In *Arnold v. Wyrick*, 646 F.2d 1225 (8th Cir. 1981), the Eighth Circuit reviewed the denial of a § 2254 petition where the petitioner had been convicted of first degree robbery but acquitted of armed criminal action. The petitioner argued that his "conviction of first degree robbery was inconsistent with his acquittal of armed criminal action." *Id.* at 1227. The Eighth Circuit found that "inconsistent verdicts on separate counts of an indictment in a single trial are not fatal to a conviction." *Id.* at 1228 (citations omitted); *see also State v. Clemons*, 643 S.W.2d 803, 805 (Mo. banc 1983) (An inconsistent verdict "does not require a reversal provided there is sufficient evidence to support the jury's finding of guilt."). Put simply, the supposedly inconsistent verdicts do not necessarily indicate that there was

insufficient evidence to support the first degree robbery conviction. Trial and appellate counsel are not ineffective for failing to raise a meritless claim. *See Thai v. Mapes*, 412 F.3d 970, 979 (8th Cir. 2005) (citation omitted) ("[C]ounsel's trial strategy cannot be challenged on the basis of a meritless claim.").

Petitioner also argues that there was no evidence to support a finding of "forcible stealing," a required element of first degree robbery. This Court finds that there was sufficient evidence for the jury to believe that Petitioner at least threatened the use of a gun. Detective Wilson testified that Petitioner "inserted the magazine into the gun and told [him] not to move." (Doc. 12-1 at 236). Counsel clarified: "Was the gun actually pointed at you?" (*Id.*). Detective Wilson responded: "Yes, sir." (*Id.*). The jury also heard testimony from the informant, who was in the car, that Petitioner possessed the gun. (*Id.* at 274-75). A reasonable juror could find Detective Wilson's statements credible and convict Petitioner of first degree robbery. *See State v. Saucy*, 164 S.W.3d 523, 527 (Mo. Ct. App. 2005) (citation omitted) ("The distinctive element of robbery in the first degree is the taking of the property of another by violence or by putting the victim in fear . . . . Further, in instances where the robber falsely pretends to be pointing a gun, the fact that defendant may not have had a gun does not prevent a conviction."). Put simply, this issue was extensively addressed at trial, and sufficient evidence was presented to the jury to support a conviction.

Second, it is not readily apparent that the jury's verdict was, in fact, inconsistent. The jury instruction for first degree robbery required that Petitioner "displayed *or threatened the use of what appeared to be* a deadly weapon." (Doc. 12-1 at 412 (emphasis added)). The armed criminal action instructions, meanwhile, required knowing use of a deadly weapon. (*Id.* at 414). The jury could plausibly have believed that Petitioner threatened the use of, but did not actually

11

use, a deadly weapon, as discussed above. At least one court in this district has reached an

identical conclusion:

> [T]he applicable law and verdict director instructions submitted to the jury did not require that the petitioner be armed in order to commit attempted first degree robbery. They required only that he take a substantial step toward committing that crime by approaching the victim, demanding money, and *threatening to shoot her*. In contrast, the requisite elements for the crime of armed criminal action required that petitioner actually be armed. Thus, if appellate counsel had raised the claim of inconsistent verdicts on appeal, it most likely would have been rejected. *Carter v. Steele*, No. 4:06-CV-1301 CDP, 2009 WL 1739997, at *5 (E.D. Mo. June 18, 2009) (emphasis added).

In closing arguments, the prosecution emphasized that to meet the fourth element of first degree

robbery, "[i]t actually doesn't even have to have been a real gun." (Doc. 12-1 at 421). Because

the jury's verdict was not necessarily inconsistent, any challenge to the sufficiency of the

evidence on these grounds would have failed.

Finally, trial counsel did argue that the evidence was insufficient to support a conviction.

Trial counsel filed a Motion for Judgment of Acquittal arguing that the "trial court erred in

accepting the jury's guilty verdict on the count of Robbery in the First Degree" because the

"jury's determination that [Petitioner] was NOT guilty of Armed Criminal Action is inconsistent

with its finding that Defendant displayed or threatened the use of what appeared to be a deadly

weapon." (Doc. 12-2 at 43). During closing arguments, trial counsel repeatedly argued that the

evidence did not support a finding that Petitioner possessed a gun at the time of the theft. (Doc.

12-1 at 431-37). Petitioner claims that trial counsel rendered ineffective assistance by failing to

argue that the evidence was insufficient to support a first degree robbery conviction. The record

reflects, however, that trial counsel made this exact argument both at trial and in the Motion for

Judgment of Acquittal. Accordingly, habeas relief is not warranted based on Petitioner's first

ground for relief.

**Ground Two: Ineffective Assistance – Converse Jury Instruction**

In his second ground for relief, Petitioner contends that trial counsel was ineffective for failing to request a converse jury instruction regarding the deadly weapon element of first degree robbery. The record reflects, however, that the instructions provided to the jury included nearly identical language to that now proposed by Petitioner. At the end of the first degree robbery instruction, the trial court stated: "However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense." (Doc. 12-1 at 412). One of those propositions was that Petitioner "displayed or threatened the use of a deadly weapon or dangerous instrument." (*Id.*).

Under Missouri law, a defendant is entitled to a converse jury instruction in order to emphasize a particular element. *State v. Davenport*, 174 S.W.3d 666, 668 (Mo. Ct. App. 2005). Petitioner did not suffer prejudice under *Strickland*, however, merely because the trial court did not make a converse instruction as to the deadly weapon element. The trial court used the approved instruction for first degree robbery. *See United States v. Naylor*, 887 F.3d 397, 405 (8th Cir. 2018) (citation omitted) ("Missouri courts are required to use the Missouri Approved Instructions – Criminal."); *State v. Zink*, 181 S.W.3d 66, 74 (Mo. banc 2005) ("MAI instructions are presumptively valid and, when applicable, must be given to the exclusion of other instructions."). A claim of ineffective assistance for failing to object to a jury instruction fails if the court's instructions as a whole "adequately advised [the jury] of the essential elements of the offenses charged." *Miles v. Nix*, 911 F.2d 146, 148 (8th Cir. 1990). The trial court advised the jury of the essential elements of first degree robbery by utilizing the approved instruction. It was not objectively unreasonable for trial counsel to accept the approved jury instruction for first degree robbery, nor was Petitioner prejudiced by the failure to provide a converse jury instruction regarding the deadly weapon element.

13

**Ground Three: Due Process – Motion to Suppress**

In his third ground for relief, Petitioner argues that the trial court erred in denying his motion to suppress statements made to Detective Stepp because such statements were obtained in violation of Petitioner's *Miranda* rights. *See Miranda v. Arizona*, 384 U.S. 436 (1966). Because this claim was fully adjudicated on the merits in state court proceedings, this Court cannot grant relief unless such adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"A Miranda warning must be administered when a suspect undergoes custodial interrogation, which occurs when an officer's interaction with the suspect is 'likely to elicit an incriminating response.'" *United States v. Torres-Lona*, 491 F.3d 750, 757 (8th Cir. 2007) (quoting *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980)). Miranda warnings are "not themselves rights protected by the Constitution but [are] instead measures to ensure that the [suspect's] right against compulsory self-incrimination [is] protected." *Moran v. Burbine*, 475 U.S. 412, 425 (1986) (quoting *New York v. Quarles*, 467 U.S. 649, 654 (1984)).

After Petitioner was arrested, Detective Stepp began advising him of his *Miranda* rights. The following exchange occurred during this videotaped interrogation:

> <u>Detective Stepp</u>: Same thing, if you understand put your initials. You have the right to talk to a lawyer for advice before you ask any questions, and to have a lawyer present during questioning. Do you understand that?
>
> <u>Petitioner</u>: Yea, I can't call my lawyer?

Detective Stepp: You can call your attorney as soon as I get done reading this. If you cannot afford to hire one if you so desire, one will be appointed for you for any questioning. Do you understand that?

Petitioner: Mm-hmm [affirmative].

Detective Stepp: Can you put your initials right there? If you decide to answer questions and/or make a statement, you have the right to stop answering questions and to remain silent. Do you understand that? And this is just saying, you can read the waiver out loud if you would please? Can you read that out loud to me?

Petitioner: Knowing and understanding what my rights are, I'm going to answer questions / or make a statement at this time – I'm not making no statement.

Detective Stepp: Okay. Could you sign it that I read it to you? And you don't want to talk to with me?

Petitioner: About what? I ain't rob nobody, especially not at no gunpoint. I didn't make nobody do nothing. (Doc. 12-5 at 8).

Following this exchange, Petitioner stated that he "rather it be a snatch and grab" than first degree robbery because he "ain't put no gun up to that man and make him do nothing." (*Id.* at 9). Detective Stepp testified regarding these statements at trial, and the videotaped interrogation was admitted as an exhibit, with portions played at trial. (Doc. 12-1 at 301-08).

At the outset of trial, Petitioner's counsel made a motion to suppress the video and testimony by Detective Stepp on the grounds that Petitioner had invoked his right to counsel and right to remain silent under *Miranda*. The trial court denied the motion because Petitioner "initiated the conversation" and "that was voluntary and done after [Petitioner] was read his rights." (*Id.* at 16). The Missouri Court of Appeals affirmed this ruling, holding that Petitioner "did not articulate his desire to have counsel present sufficiently clearly that a reasonable police officer would understand that statement to be a request for an attorney." (Doc. 12-5 at 9). The court also found that Petitioner "voluntarily waived his right by continuing to make statements to Detective Stepp even after he mentioned calling his lawyer." (*Id.* at 10).

A suspect must make a "clear and unambiguous request for counsel." *United States v. Langford*, 155 Fed. App'x 936, 937 (8th Cir. 2005) (per curiam) (citing *Davis v. United States*, 512 U.S. 452, 459 (1994)). The Supreme Court has adopted this same standard for invocation of the right to remain silent. *Berghuis v. Thompkins*, 560 U.S. 370 (2010). These rights can be waived after being invoked. "Where the prosecution shows that a *Miranda* warning was given and that it was understood by the accused, an accused uncoerced statement establishes an implied waiver of the right to remain silent." *Id.*; *see also Davis v. United States*, 512 U.S. 452, 458 (1994) (citation omitted) ("[I]f a suspect requests counsel at any time during the interview, he is not subject to further questioning until a lawyer has been made available or the suspect himself reinitiates conversation.").

Petitioner did not unequivocally invoke his right to counsel simply by asking if he can call his lawyer. In *Davis*, the Supreme Court affirmed that a suspect's stating "[m]aybe I should talk to a lawyer" did not constitute an unambiguous request for counsel. *Davis*, 512 U.S. at 462. In very similar circumstances to this case, the Eighth Circuit has held that a suspect's asking "Could I call my lawyer?" was not an unambiguous request for counsel. *Dormire v. Wilkinson*, 249 F.3d 801, 805 (8th Cir. 2001). Petitioner here asked if he could call his lawyer and was informed that he could once Detective Stepp finished reading the *Miranda* warnings. Petitioner's question does not amount to an unequivocal request for counsel. The Missouri Court of Appeals, moreover, reasonably applied federal law in reaching the same conclusion.

Petitioner arguably invoked his right to remain silent by stating he was "making no statement." (Doc. 12-5 at 8). A suspect invokes his right to remain silent by making a "clear, consistent expression of a desire to remain silent," but "assertions of an intent to exercise the right to remain silent are not enough to invoke the right." *United States v. Ferrer-Montoya*, 483 F.3d 565, 569 (8th Cir. 2007) (citations omitted). Statements like "I have nothing else to say"

have been held to meet this standard. *United States v. Reid*, 211 F. Supp. 2d 366, 374-75 (D. Mass. 2002). A suspect "need not speak with the discrimination of an Oxford don" to invoke this right. *Davis*, 512 U.S. at 459. The Missouri Court of Appeals did not specifically address whether Petitioner had invoked his right to remain silent.

Even if Petitioner had invoked his right to counsel and to remain silent, however, he waived those rights by continuing to make voluntary statements to Detective Stepp. A waiver of rights under *Miranda* must be voluntary, knowing, and intelligent. *See Prentiss v. Ault*, 352 Fed. App'x 141, 142 (8th Cir. 2009) (per curiam) (citing *Miranda*, 384 U.S. at 444). Petitioner informed Detective Stepp that he was "not making no statement." (Doc. 12-5 at 8). Detective Stepp asked Petitioner to sign that the statement was read to him and confirmed that Petitioner "doesn't want to talk with [him]." (*Id.*). Petitioner responded: "About what? I ain't rob nobody, especially not at no gunpoint. I didn't make nobody do nothing." (*Id.*). Petitioner proceeded to make multiple statements without expressing any further desire to remain silent. The Missouri Court of Appeals reasonably concluded that Petitioner "voluntarily continued speaking to Detective Stepp despite his initial assertion that he did not want to make a statement." (*Id.* at 10). Under *Miranda*, interrogation must cease after an invocation of such rights "unless the accused himself initiates further communication, exchanges, or conversation with the police." *Edwards v. Arizona*, 451 U.S. 477, 485 (1981). After Petitioner's potential invocation of his right to remain silent, Detective Stepp merely confirmed that Petitioner was exercising this right. The Missouri Court of Appeals reasonably determined that Petitioner proceeded to knowingly and voluntarily waive his rights by initiating further conversation. *See North Carolina v. Butler*, 441 U.S. 369 (1979) (holding *Miranda* rights can be impliedly waived).

Pursuant to AEDPA, this Court may only grant Petitioner habeas relief if it determines that the Missouri Court of Appeals' adjudication "was contrary to, or involved an unreasonable

17

application of, clearly established federal law." 28 U.S.C. § 2254(d)(1). Such review is "highly

deferential." *Ali v. Roy*, 950 F.3d 572, 574 (8th Cir. 2020) (citation omitted). The Missouri Court

of Appeals reviewed the facts and reasonably concluded that the trial court properly denied

Petitioner's motion to suppress statements made during Detective Stepp's interrogation.

## IV.    CONCLUSION

After careful consideration, this Court holds that Petitioner is not entitled to habeas relief.

First, Petitioner did not timely file his petition, and Petitioner has not demonstrated that equitable

tolling is warranted. Second, Petitioner procedurally defaulted his first two grounds for relief and

has not established that the defaults should be excused pursuant to the *Martinez* exception.

Finally, Petitioner's arguments fail substantively because he has not met the *Strickland* standard

for his ineffective assistance claims and the Missouri Court of Appeals reasonably applied

federal law to Petitioner's sole exhausted claim.

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner Terrance T. Norman's Amended Petition to

Vacate, Set Aide, or Correct Sentence Pursuant to 28 U.S.C. § 2254 (Doc. 11) is **DENIED** and

this case is hereby **DISMISSED**. A separate Order of Dismissal will accompany this

Memorandum and Order.

**IT IS FURTHER ORDERED** that, because Petitioner cannot make a substantial

showing of the denial of a constitutional right, the Court will not issue a certificate of

appealability. *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997), cert. denied, 525 U.S. 834

(1998).

Dated this 27th day of April, 2021.

JOHN A. ROSS
UNITED STATES DISTRICT JUDGE